IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER DAWN BANDRUP,

        Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civ. No. 1:16-cv-01550-AA

OPINION & ORDER

AIKEN, District Judge:

Plaintiff Jennifer Dawn Bandrup seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability and disability insurance benefits pursuant to Title II of the Social Security Act and supplemental security income pursuant to Title XVI. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on July 2, 2012. Tr. 15. Plaintiff alleged disability beginning December 31, 2009. *Id.* Her application was denied initially and upon review. *Id.* Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held November 6, 2014. *Id.* On January 7, 2015, the ALJ issued a decision finding

Plaintiff not disabled. Tr. 28. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 3. This *pro se* appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2009. Tr. 17. The ALJ determined that Plaintiff had the following severe impairments: obesity; affective disorder (bipolar); anxiety disorder; autoimmune disorder; mild degenerative joint disease bilaterally in the knees; hepatitis C; and hypertension. *Id.* The ALJ determined that Plaintiff's severe impairments did not meet or equal a listed impairment. Tr. 18.

The ALJ determined that Plaintiff had the RFC to perform medium work with the following additional restrictions: she can perform frequent but not constant climbing of ladders, ropes, and scaffolds, kneeling, and crouching; she must avoid concentrated exposure to non-weather related extremes of cold and heat; and she can perform work that requires no more than frequent interaction with coworkers. Tr. 19-20.

The ALJ found that Plaintiff was able to perform her past relevant work as a computer support technician, as a graphics designer, or as a receptionist. Tr. 27. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 27-28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts that the ALJ erred by (1) finding that she did not meet or medically equal a listed impairment at step three of the analysis; (2) improperly rejecting the medical opinion of Dr. Klein; (3) failing to develop the records; and (4) finding that Plaintiff could perform her past relevant work.

### I. Step Three

Plaintiff asserts that the ALJ erred by failing to find that her autoimmune disorder met or medically equaled a listed impairment, either for systemic lupus erythematosus or for undifferentiated and mixed connective tissue disease. Pl. Br. 3-4.

At step three of the sequential analysis, the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed impairments). The plaintiff bears the burden of demonstrating that she has an impairment that meets or equals a listed impairment. *Burch*, 400 F.3d at 683. A plaintiff must show that she meets all of the criteria contained in the Listing in order to demonstrate medical equivalence. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

The ALJ considered Plaintiff's autoimmune disorder and determined that it did not meet or medically equal a listed impairment:

> In regards to the claimant's alleged autoimmune disorder, the evidence does not demonstrate the requisite degree of joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological, mental involvement or the involvement of two or more organs/body symptoms with significant, documented, constitutional symptoms and signs of severe fatigue fever, malaise and weight loss required under 14.00 for Immune System Disorders.

Tr. 18.

Plaintiff asserts that the ALJ erred in failing to find that Plaintiff's autoimmune disorder met or medically equaled Listing 14.02, for systemic lupus erythematosus ("SLE"), and Listing 14.06, for undifferentiated and mixed connective tissue disease.

Generally, SLE is established when the medical evidence shows that the claimant's SLE satisfies the criteria established by the American College of Rheumatology. 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.00.D.1.

> [SLE] is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritic, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of

> circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.00.D1.

In order to satisfy the Listing for SLE, the regulations require involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.02. Alternatively, the claimant must demonstrate repeated manifestations of SLE with at least two of the constitutional symptoms or signs (severe fever, malaise, or involuntary weight loss) and a marked limitation in activities of daily living, or maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.*

Undifferentiated and mixed connective tissue disease "includes syndromes with clinical and immunologic features of several autoimmune disorders, but which do not satisfy the criteria for any of the specific disorders described." 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.00.D.5. Listing 14.06 requires essentially the same degree of severity as SLE under Listing 14.06. 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.06.

Plaintiff was examined by Theerapol Prasertsuntarasai, M.D., a rheumatologist, in January 2013. Tr. 22. Plaintiff reported aching pain "all over," and fatigue, but denied fevers or unexplained weight loss. Tr. 473. Although Plaintiff had positive ANA results, Dr. Prasertsuntarasai declined to diagnose Plaintiff with SLE. Tr. 475. Nor did Dr. Prasertsuntarasai diagnose undifferentiated and mixed connective tissue disease. *Id.* Rather, Dr. Prasertsuntarasai attributed Plaintiff's ANA result and other symptoms to untreated hepatitis C. *Id.* At the hearing, Plaintiff's attorney acknowledged that there was no confirmed diagnosis of SLE. Tr. 39.

Plaintiff has not presented any evidence that would support a finding that her condition meets or medically equals a listed impairment. Although Plaintiff asserts that she has now been diagnosed with undifferentiated and mixed connective tissue disease, it appears that that diagnosis post-dates the ALJ's decision and it is not included in this record. Pl. Br. 3-4. Accordingly, the Court concludes that the ALJ did not err in finding that Plaintiff's autoimmune disorder did not meet or medically equal a listed impairment.

## II. Dr. Klein

Plaintiff asserts that the ALJ erred by rejecting the medical opinion of Joel Klein, M.D., Plaintiff's treating physician. Pl. Br. 5-6. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or internal inconsistency. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43; *Morgan v. Comm'r*, 169 F.3d 595, 601-03 (9th Cir. 1999).

When a non-examining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the non-examining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Nguyen v. Colvin*, 95 F. Supp.3d 1286, 1293 (D. Or. 2015) (citing *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

In October 2014, Dr. Klein submitted a medical assessment form, in which he diagnosed Plaintiff with chronic fatigue syndrome and an undefined autoimmune disorder based on intermittently positive ANA results. Tr. 654-58. Dr. Klein opined that Plaintiff would be unable to perform routine, repetitive tasks at a consistent pace; detailed or complicated tasks; or fast paced tasks, and would be "off task" at least 15% of the time. Tr. 655. Dr. Klein opined that Plaintiff could sit for two hours before needing to change position and could stand for forty-five minutes before needing to sit or lay down. Tr. 655-56. Dr. Klein believed that plaintiff could sit for about four hours and stand or walk for about two hours in an eight hour day. Tr. 656. Dr. Klein believed that Plaintiff would require five unscheduled restroom breaks during the workday and would require five additional unscheduled breaks. *Id.* Dr. Klein stated that Plaintiff would need to elevate her legs to waist level for at least two hours during an eight-hour workday. *Id.* Dr. Klein believed that Plaintiff could rarely lift and carry up to ten pounds and never twenty or more pounds. *Id.* He believed that Plaintiff could occasionally twist or stoop and could only use her hands to grasp, turn, or twist objects 30% of the time; perform fine manipulations 25% of the time, and reach overhead 25% of the time. Tr. 657. Dr. Klein believed that Plaintiff needed to avoid concentrated or moderate exposure to heat, cold, humidity, and UV light and needed to avoid all exposure to sunlight. *Id.*

In terms of mental limitations, Dr. Klein opined that Plaintiff would have noticeable difficulty during 20% of the workday understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for at least two hours, a few times per day; performing activities within a schedule and be punctual; or dealing with the stresses of skilled or semi-skilled work. Tr. 658. He opined that Plaintiff would have noticeable difficulty during 10% of the workday accepting instructions and responding appropriately to criticism from supervisors and working in coordination with or proximity to coworkers without being distracted or distracting them or exhibiting behavioral extremes. *Id.* He opined that Plaintiff would be unable to complete a normal workday without interruptions from symptoms which cause an unreasonable number and length of rest periods, or perform accurately and at a consistent pace. *Id.*

The ALJ assigned little weight to the opinion of Dr. Klein. Tr. 26. Dr. Klein's opinion was contradicted by reviewing physician Lloyd Wiggins, M.D. Tr. 108. The ALJ was therefore obliged to give specific, legitimate reasons for discounting Dr. Klein's opinion.

The ALJ concluded that the limitations assessed by Dr. Klein were not supported by objective medical evidence, including observations in Dr. Klein's own treatment notes. Tr. 26. In particular, the ALJ noted that "Dr. Klein's opinion regarding the claimant's limitations is not supported by the other objective medical evidence in the claimant's file consistently showing normal musculoskeletal functioning with no abnormalities." *Id.*

In October 2014, Dr. Klein stated that it was "very likely" that Plaintiff has some undefined underlying autoimmune disease, "likely due to a chronic lifelong fungal dysbiosis." Tr. 643. The ALJ noted that there was no firm support for such a diagnosis, however, and testing of Plaintiff revealed no more than mild limitations. Tr. 26.

In March 2013, Dr. Klein found no obvious joint deformities, hypertrophy, or swelling. He observed normal gait, with no major joint swelling and a full range of motion in Plaintiff's upper and lower extremities, with no cyanosis, clubbing, or edema. Tr. 549. Dr. Klein had similarly benign findings in April 2013. Tr. 554. Dr. Klein's treatment notes generally found Plaintiff with "no acute distress, well nourished and well developed," and with no major joint swelling, joint pain, muscle pain, or arthritis, including entries from June 2013, July 2013, August 2013, September 2013, February 2014, April 2014, July 2014, and October 2014. Tr. 563, 566. 568, 570, 572, 642, 645, 651-52. Dr. Klein's treatment notes from June 2014 indicate muscle pain and weakness, but once again show a normal gait and full range of motion in Plaintiff's extremities. Tr. 648.

The ALJ also concluded that Dr. Klein's opinion contradicted Plaintiff's activities of daily living. As previously noted, conflict with the claimant's daily activities is a valid reason for rejecting a medical opinion. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan*, 169 F.3d at 601-03. Plaintiff lives with her husband, who is disabled, and she does all of the shopping, cleaning, laundry, paying of bills, driving, and making of medical appointments for the household. Tr. 58, 275. Plaintiff also worked part time at a jewelry store until the store went out of business in 2013. Tr. 45-46. The ALJ noted that there is no reason to believe that Plaintiff would have discontinued working had the business remained a going concern. Tr. 26. The ALJ reasonably concluded that Plaintiff's daily activities were inconsistent with the degree of limitation assessed by Dr. Klein.

Finally, the ALJ concluded that Dr. Klein's opinion appeared to be based largely on Plaintiff's own statements regarding the severity of her impairments. Tr. 26. The ALJ may properly reject an opinion if it is premised on the claimant's subjective complaints and the ALJ

has already validly discounted the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). In this case, the ALJ found Plaintiff less than fully credible with regard to her subjective symptom testimony. Tr. 20. Plaintiff does not appear to challenge the ALJ's credibility determination and so that determination stands. In light of Dr. Klein's relatively benign clinical findings, the ALJ reasonably concluded that Dr. Klein relied on Plaintiff's subjective complaints in forming his opinion of Plaintiff's physical and mental limitations.

Based on this record, the Court concludes that the ALJ adequately supported his decision to assign little weight to the opinion of Dr. Klein.

### III. Solicitation of Additional Evidence

Plaintiff also asserts that the ALJ erred by failing to develop the record by soliciting additional medical evidence and by failing to consider any medical records from after 2014 in formulating the RFC. Pl. Br. 4-5. With regard to the second issue, the ALJ's opinion was issued on January 7, 2015, and so would necessarily have been based on records from 2014 and earlier. Tr. 28.

With regard to the ALJ's duty to develop the record, the ALJ has an affirmative duty to ensure the adequate development of the record. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). The duty to fully and fairly develop the record ensures that the claimant's interests are considered, even when the claimant is represented by counsel. *Id.* The responsibility to develop the record "rests with the ALJ in part because disability hearings are inquisitorial rather than adversarial in nature." *Bulger v. Colvin*, Case No. 6:15-cv-01873-SI, 2016 WL 6963041, at *6 (D. Or. Nov. 28, 2016) (internal quotation marks and citation omitted). The ALJ's duty to develop the record is triggered only by "ambiguous evidence or when the record is inadequate for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

2001). The evidence is "insufficient when it does not contain all the information [the SSA] need[s] to make [its] determination or decision." 20 C.F.R. § 416.920b. However, 20 C.F.R. § 416.920b does not mandate that that an ALJ request further testing. "Rather, the regulation gives an ALJ the discretion to develop the record further by requesting a consultative examination, among other approaches." *Bulger*, 2016 WL 6963041 at *6.

Plaintiff's argument on this issue is not entirely clear. She appears to assert that the ALJ erred by failing to request Plaintiff's records from Jackson County Mental Health ("JCMH"), but as the Commissioner points out, those records were included in the record before the ALJ as Exhibit 4F. Tr. 405-422. This assignment of error appears to have stemmed from some confusion during the hearing about whether there were additional JCMH records. Tr. 56. During the hearing, Plaintiff's attorney represented that there were no additional exhibits beyond what the ALJ already possessed and raised no objection to the admission of those exhibits. Tr. 38-39. Plaintiff does not clearly assert that any such additional JCMH records exist and the Court concludes that this was not a sufficient ambiguity to trigger the ALJ's duty to develop the record.

Plaintiff also appears to assert that the ALJ erred by failing to ask Dr. Klein for additional clarification regarding Plaintiff's diagnosis and limitations. Plaintiff does not, however, identify any ambiguity in the record, nor does she clearly allege that the record was insufficiently developed to allow for proper evaluation of the evidence. Rather, as discussed in the preceding section, the ALJ found that Dr. Klein's opinion was contradicted and that there were sufficient grounds for assigning reduced weight to that opinion.

The Court concludes that the ALJ did not err by declining to solicit additional medical records or opinions on behalf of Plaintiff.

## IV. Step Four Findings

Plaintiff objects to the ALJ's determination at step 4 of the analysis that she was capable of performing her past relevant work and was therefore not disabled. Pl. Br. 6-7. Plaintiff argues that if the hypothetical question posed to the vocational expert ("VE") included additional limitations, such as those assessed by Dr. Klein, then she would be unable to return to her past relevant work.

The VE testified that an individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as a receptionist, a graphic designer, and a computer support technician. Tr. 69-70. Although the VE did testify that the inclusion of additional limitations beyond those contained in the RFC would preclude Plaintiff from returning to her past relevant work, or work more generally, Tr. 70-71, the ALJ gave detailed reasons for rejecting those additional limitations in formulating the RFC. Tr. 19-27. Although Plaintiff disputes portions of the ALJ's decision and disputes his interpretation of the record, the Court has affirmed the ALJ's decision, as discussed in the preceding sections.

## CONCLUSION

For the reasons set forth above, the decision of the ALJ is AFFIRMED and final judgment shall be entered.

DATED this 2nd day of ~~December,~~ January 2018.

ANN AIKEN
United States District Judge